IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| CHENGBIN WANG and HELEN DING, | |
| Plaintiffs, | |
| v. | 1:07-cv-00948-WSD |
| MICHAEL CHERTOFF, Secretary, U.S. Department of Homeland Security; PETER D. KEISLER,[1] Acting U.S. Attorney General; EMILIO T. GONZALEZ, Director, U.S. Citizenship and Immigration Services; EVELYN UPCHURCH, Director, U.S. Citizenship and Immigration Services, Texas Service Center, | |
| Defendants. | |

## OPINION AND ORDER

This matter is before the Court on Defendants' Motion to Dismiss [4],

Plaintiffs' Motion for Extension of Time [11], and Defendants' Motion to Strike

[13].

---

[1] Plaintiffs named former U.S. Attorney General Alberto R. Gonzales as a defendant in the original Complaint [1]. Attorney General Gonzales resigned effective September 17, 2007. Pursuant to Fed. R. Civ. P. 25(d)(1), the Court has substituted as defendant Acting U.S. Attorney General Peter D. Keisler.

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff Dr. Chengbin Wang is a foreign national residing within the United States.  On February 25, 2005, Dr. Wang filed a Form I-485 Application to Register Permanent Residence or to Adjust Status with the United States Citizenship and Immigration Services ("USCIS"), an agency within the U.S. Department of Homeland Security ("DHS").  Also on February 25, 2005, Dr. Wang's wife, Helen Ding (Dr. Wang and Ms. Ding will be collectively referred to as "Plaintiffs") filed a derivative application for adjustment of permanent residence status (Form I-485), claiming the benefits of Dr. Wang's application.  Ms. Ding's application is dependent upon approval of Mr. Wang's I-485 application.  Plaintiffs allege they are eligible to adjust their status to lawful permanent residence pursuant to 8 U.S.C. § 1255.[2]

Plaintiffs have taken several steps to process their I-485 applications. Plaintiffs have been fingerprinted twice by USCIS (in May 2005 and December 2006).  Plaintiffs have several times inquired as to the status of their pending I-485

---

[2] On the same day as he filed his I-485 application, Dr. Wang filed a Form I-140 Immigration Petition for Alien Worker pursuant to a national interest waiver in the advanced degree/exceptional ability employment category.  USCIS approved Dr. Wang's Form I-140 visa petition on May 7, 2005.  Plaintiffs' I-485 applications remain pending.

applications, including personal inquiries at USCIS, letters to Senator Richard

Shelby and Congressman Spencer Bachus, and a letter to the Texas Service Center

of the USCIS.  In January 2007, Dr. Wang made a Freedom of Information Act

request regarding the status of his application.  Plaintiffs have been consistently

advised that their applications remain under consideration pending completion of a

Federal Bureau of Investigation ("FBI") "name check."

An I-485 application seeking adjustment to lawful permanent residence

status sets in motion numerous mandatory criminal and national security

background checks.[3]  Each of these background procedures must be completed

before final adjudication of an application.  These background procedures include

an FBI name check, FBI fingerprint check, and a check by the DHS-managed

Interagency Border Inspection System.  The security background procedures and

checking process is a multi-agency effort processed centrally by USCIS and

involves gathering information from more than twenty (20) federal law

enforcement and intelligence agencies.

The FBI name check phase is the most cumbersome and time-consuming

---

[3] The Court has been advised through the Declaration of Naboone
Puripongs, a Supervisor with the Texas Service Center of the USCIS, of various I-
485 application processing procedures.

background procedure.  A name check requires the FBI to compare an applicant's name against a variety of administrative, criminal, personnel, and other files inputted into the FBI's Universal Index.  In approximately eighty percent (80%) of cases, no match is found during this initial phase, and the individual's name check is cleared.  The remaining twenty percent (20%) of applications generally are cleared within six months.  About one percent (1%) of cases involve complex and highly sensitive information, and those cases can take substantially longer than six months to resolve.  The Texas Service Center of USCIS has more than 50,000 pending employment-based I-485 applications in process.

Plaintiffs' I-485 applications have been undergoing required national security investigations since they were filed.  Dr. Wang's application remains pending because required national security background procedures are still in process.

Plaintiffs filed this action on April 27, 2007 seeking mandamus and injunctive relief compelling Defendants to complete adjudication of their applications.  Plaintiffs contend, among other things, that the over two-year delay since the filing of their I-485 applications is an unlawful withholding or unreasonable delay in adjudication of their applications in violation of the

4

Administrative Procedures Act, 5 U.S.C. §§ 500 <u>et seq.</u>

Plaintiffs allege subject matter jurisdiction under 28 U.S.C. § 1331, 28 U.S.C. § 1346(a)(2), 28 U.S.C. § 1361, 28 U.S.C. § 2201, and 5 U.S.C. §§ 704, 706.  Defendants move to dismiss Plaintiffs' complaint for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).

## II.    DISCUSSION

### A.    <u>Motion To Dismiss For Lack Of Subject Matter Jurisdiction</u>

#### 1.    **Standard of Review**

An action may proceed in this Court only if federal subject matter jurisdiction exists.  <u>Lifestar Ambulance Serv., Inc. v. United States</u>, 365 F.3d 1293, 1295 (11th Cir. 2004), <u>cert. denied</u>, 543 U.S. 1050 (2005).  Federal Rule 12(b)(1) permits litigants to move for dismissal when the court lacks jurisdiction over the subject matter of the dispute.  Fed. R. Civ. P. 12(b)(1).  "Attacks on subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) come in two forms.  'Facial attacks' on the complaint require the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion.  'Factual attacks,' on

the other hand, challenge the existence of subject matter jurisdiction in fact,

irrespective of the pleadings, and matters outside the pleadings, such as testimony

and affidavits, are considered." Lawrence v. Dunbar, 919 F.2d 1525, 1528-29

(11th Cir. 1990) (internal citations omitted).

> **2.      Jurisdiction Under the Administrative Procedures Act (5**
>
> **U.S.C. §§ 704 and 706)**

The Administrative Procedures Act ("APA"), 5 U.S.C. §§ 500 et seq.,

authorizes lawsuits by "person[s] suffering legal wrong because of agency action,

or adversely affected or aggrieved by agency action within the meaning of a

relevant statute . . . ." 5 U.S.C. § 702. The APA allows judicial review of agency

actions where the action is "made reviewable by statute" or the action is a "final

agency action for which there is no other adequate remedy in a court." Id. § 704.

"[A] preliminary, procedural, or intermediate agency action or ruling not directly

reviewable is subject to review on the review of the final agency action." Id. The

APA defines "agency action" to include "the whole or a part of an agency rule,

order, license, sanction, relief, or the equivalent or denial thereof, or failure to act."

Id. § 551(13). Plaintiffs contend the APA confers general jurisdiction on the Court

to review the progress of – or in Plaintiffs' view the lack of final decision on –

their I-485 applications.

The "agency actions" Plaintiffs challenge in their complaint are based exclusively on discretionary acts authorized by the Immigration and Nationality Act ("INA").  Section 245 of the INA grants to the Attorney General exclusive discretion to adjust the residence status of certain aliens who have been admitted into the United States.  Section 245 provides:

> The status of an alien who was inspected and admitted or paroled into the United States . . . may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence . . . .

8 U.S.C. § 1255(a).[4]  Neither Section 245 nor any underlying regulation prescribe the time in which adjudication of a resident alien's status must occur or a deadline by which a decision must be made.  8 U.S.C. § 1255(a); 8 C.F.R. §§ 245.1, 245.2.

Whether the Court may consider alleged violations of the APA or INA depends on whether Congress has granted to the Court jurisdiction to do so.  "Only

---

[4] This grant of authority to the Attorney General has also be delegated to the DHS and USCIS.  6 U.S.C. §§ 271(b), 557; 8 C.F.R. § 245.2.  For the sake of simplicity in this Order, the Court refers to the Attorney General as the office charged with adjudicating Plaintiffs' adjustment of status applications.  It is understood that actual determinations may be made by USCIS and, ultimately, DHS.  E.g., Li v. Gonzales, No. 06-5911 (SRC), 2007 WL 1303000, at *3 n.1 (D.N.J. May 3, 2007).

the jurisdiction of the Supreme Court is derived directly from the Constitution.

Every other court created by the general government derives its jurisdiction wholly

from the authority of Congress."  <u>Kline v. Burke Constr. Co.</u>, 260 U.S. 226, 234

(1922).

Here, Congress has expressed its intention to preclude the district courts

from exercising jurisdiction over discretionary actions committed to the Attorney

General by the INA.  Section 242 of the INA provides:

> Notwithstanding any other provision of law (statutory or nonstatutory),
> including section 2241 of Title 28, or any other habeas corpus provision, and
> sections 1361 and 1651 of such title, and except as provided in subparagraph
> (D), and regardless of whether the judgment, decision, or action is made in
> removal proceedings, no court shall have jurisdiction to review--
> * * *
> (ii) *any other decision or action* of the Attorney General or the Secretary of
> Homeland Security *the authority for which is specified under this
> subchapter to be in the discretion of the Attorney General or the Secretary of
> Homeland Security*, other than the granting of relief under section 1158(a) of
> this title.

8 U.S.C. § 1252(a)(2)(B) (emphasis added);[5] <u>see also</u> REAL ID Act of 2005, Pub.

---

[5] The only exemption to the jurisdictional prohibition expressed in this
statute grants the Court jurisdiction over "the granting of relief under section
1158(a) of this title," governing grants of asylum.  8 U.S.C. § 1158(a).  Asylum is
not at issue in this case.

8

L. No. 109-13, 119 Stat. 231 (effective May 11, 2005);[6] Arias v. U.S. Atty. Gen., 482 F.3d 1281, 1283 (11th Cir. 2007) ("Additionally, pursuant to 8 U.S.C. § 1252(a)(2)(B)(ii), we lack jurisdiction to review a discretionary decision of the Attorney General or the Secretary of Homeland Security.").

Courts around the country have recognized that Section 242 of the INA reserves I-485 application decisions to the Attorney General.  E.g. Safadi v. Howard, 466 F. Supp. 2d 696, 698 (E.D. Va. 2006) (8 U.S.C. § 1252(a)(2)(B)(ii) is "refreshingly free from ambiguity and its terms are pellucidly clear:  It means that courts are precluded from reviewing *any* discretionary decision or action" of the Attorney General taken under the authority of Section 245); Grinberg v. Swacina, 478 F. Supp. 2d 1350, 1354 (S.D. Fla. 2007); Romanovich v. Gonzales, No. 07-CIV-60224, 2007 WL 1229047, at *1 (S.D. Fla. Apr. 4, 2007); Rogatch v.

---

[6] Before its 2005 amendment, 8 U.S.C. § 1252(a)(2)(B) read:

Notwithstanding any other provision of law, no court shall have jurisdiction to review--
* * *
(ii) any other decision or action of the Attorney General the authority for which is specified under this subchapter to be in the discretion of the Attorney General, other than the granting of relief under section 1158(a) of this title.

8 U.S.C. § 1252(a)(2)(B) (May 10, 2005).

Chertoff, No. CA 06-541ML, 2007 WL 1160358, at *2 (D.R.I. Apr. 17, 2007);
Serrano v. Quarantillo, 2007 WL 1101434, at *2 (D.N.J. Apr. 9, 2007); Patil v.
Mueller, No. 1:07cv71 (JCC), 2007 WL 1302752, at *1 (E.D. Va. Apr. 30, 2007);
El-Khader v. Perryman, 264 F. Supp. 2d 645, 649 (N.D. Ill. 2003), aff'd 366 F.3d
562 (7th Cir. 2004) (construing prior version of statute).

     The only remaining question to be addressed in deciding the scope of
Section 242's jurisdictional preclusion is to determine the scope of what the
Attorney General has been given discretion over by the INA.  That is, does the
Court have jurisdiction to determine whether the *pace* at which an application is
adjudicated is proper.  The Court concludes it does not.

     Plaintiffs acknowledge that Section 245 of the INA vests in the Attorney
General exclusive authority to decide I-485 applications.  They argue, however,
that, "there is a difference between the [Attorney General's] discretion over *how* to
resolve an application and the [Attorney General's] discretion over *whether* it
resolves an application."  Singh v. Still, 470 F. Supp. 2d 1064, 1068 (N.D. Cal.
2007) (emphasis in original).  Plaintiffs contend the over two-year delay in
deciding their applications is effectively a determination not to decide their
applications, violating the APA.  Plaintiffs' argument ignores the express grant of

discretion to the Attorney General in the INA and ignores the undisputed evidence

that these applications are being processed, just not as quickly as Plaintiffs desire.

Congress used two specific terms, "actions" and "decisions," when

describing what is within the Attorney General's exclusive discretion, and which is

thus precluded from district court jurisdiction.  That two terms were used

necessarily means that "actions" differ from "decisions."  The Eleventh Circuit

"has repeatedly stated that we begin our construction of a statutory provision . . .

with the words of the statutory provision . . . .[W]hen the import of words

Congress has used is clear we . . . should not . . . undermine the plain meaning of

the statutory language."  CBS Inc. v. Primetime 24 Joint Venture, 245 F.3d 1217,

1222 (11th Cir. 2001) (internal citations and quotation marks omitted).  The plain

meaning of "decision" in this context refers to a final decision, or order, of the

Attorney General.  Black's Law Dictionary 436 (8th ed. 2004) ("Decision" means

"A judicial or agency determination after consideration of the facts and the law ").

"Action," therefore, must encompass something other than a final order – an

interpretation completely consistent with the definition of "agency action" in the

APA.  In § 551(13) of the APA, "agency action" is defined as "the whole or a part

of an agency rule, order . . . or failure to act."  5 U.S.C. § 551(13).  That definition

11

is also consistent with the plain meaning of the word "action" itself.  Black's Law Dictionary at 31 ("Action" means "The process of doing something; conduct or behavior."); Safadi, 466 F. Supp. 2d at 699.

If Congress wanted to preclude the courts from exercising jurisdiction only over final agency "decisions," then the word "action" could have been omitted.  It was not, and to give meaning to this other word, the Court, and other courts in this and other circuits, reach the conclusion that "actions" under Section 242 "encompass[] the *entire* process of reviewing an adjustment application, including the completion of background and security checks and the pace at which the process proceeds."  Safadi, 466 F. Supp. 2d at 699; accord Grinberg, 478 F. Supp. 2d 1350; Eldeeb v. Chertoff, No. 8:07-cv-236, 2007 WL 2209231, at *19 (M.D. Fla. July 30, 2007); Romanovich, 2007 WL 1229047, at *2; Levy v. Gonzales, No. 1:07-cv-644-TCB (N.D. Ga. June 18, 2007); Qiu v. Chertoff, 486 F. Supp. 2d 412, 420-21 (D.N.J. 2007); Hu v. Chertoff, No. CIV. S-06-2805 WBS EFB, 2007 WL 1515067, at *4 (E.D. Cal. May 22, 2007); Zhang v. Chertoff, 491 F. Supp. 2d 590, 592-93 (W.D. Va. 2007); Li v. Gonzales, 2007 WL 1303000, at *6.

Plaintiffs also ask the Court to ignore that their applications are currently in-process.  Plaintiffs do not allege USCIS is refusing to adjudicate anything;

Plaintiffs admit that USCIS has been actively processing their applications for over two years.  Where USCIS is clearly processing an adjustment of status application, even if slowly, the INA prevents the Court from interceding.[7]

Plaintiffs in this case, and others, attempt to avoid the plain meaning of Section 242 of the INA by arguing that the APA itself allows the Court to evaluate the pace of application processing.[8]  Plaintiffs rely on Section 706 of the APA, which provides that, "the reviewing court shall . . . compel agency action unlawfully withheld or unreasonably delayed . . . ."  5 U.S.C. § 706.  They also rely on a further provision of the APA which states:  "With due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it."  Id. § 555(b).  Plaintiffs contend the over two-year delay on their I-485 applications amounts to an "unlawful withholding" or "unreasonable delay" of their

_____

[7]  The Court recognizes that were the Attorney General or USCIS refusing to adjudicate Plaintiffs' applications, then the Court would have jurisdiction to compel the Attorney General to perform his non-discretionary duties.  There is no evidence in this case that USCIS is refusing to adjudicate anything.

[8]  Although the APA does not confer an independent grant of jurisdiction to the district courts, Califano v. Sanders, 430 U.S. 99, 105 (1977), the Court would have jurisdiction to remedy violations of the APA under the federal question statute.  28 U.S.C. § 1331.

applications and that the Court has jurisdiction to require prompt adjudication of Plaintiffs' applications.

There is some authority to support this argument. A minority of district courts in this and other circuits exercised jurisdiction to prevent "unreasonable delays" in adjustment of status applications. E.g., Singh, 470 F. Supp. 2d at 1067-68; Jones v. Gonzales, No. 07-20334-CIV, 2007 WL 1810135 (S.D. Fla. June 21, 2007); Lopez v. Chertoff, No. 6:07-cv-735, 2007 U.S. Dist. LEXIS 68447, at *6 (M.D. Fla. Sept. 17, 2007); Cohen v. Ashcroft, No. 1:05-CV-182 (N.D. Ga. Oct. 14, 2005); Choudry v. Chertoff, No. 1:07-CV-426 (N.D. Ga. Mar. 12, 2007). These decisions reason that the "unreasonable delay" language found in the APA is a general prohibition against any agency actions being unreasonably delayed. Cf., Burlison v. McDonald's Corp., 455 F.3d 1242, 1247 (11th Cir. 2006) (citing "longstanding canons of statutory construction, including the general principle that courts must not interpret one provision of a statute to render another provision meaningless."). These decisions are unpersuasive on the facts of this case.

"[A] claim under § 706(1) [of the APA] can proceed only where a plaintiff asserts than an agency failed to take a *discrete* agency action that it is *required to take*." Norton v. S. Utah Wilderness Alliance, 542 U.S. 55, 64 (2004) (emphasis in

14

original).  The INA does not set a time period within which USCIS must adjudicate

adjustment of status applications.  That fact, coupled with the express prohibitions

of the INA, express the clear intent that Congress gave to the Attorney General

complete discretion over procedures used to grant or deny adjustment of status.  8

U.S.C. § 1255(a); Badier v. Gonzales, 475 F. Supp. 2d 1294, 1297 (N.D. Ga.

2006).  Plaintiffs have not alleged that USCIS failed to take discrete action; rather,

Plaintiffs allege only that the pace at which USCIS is proceeding must constitute

an "unreasonable delay."  This is not then a case of failure to act, but rather one of

failure to act quickly enough for Plaintiffs.[9]

Plaintiffs' argument that the APA's "unreasonable delay" provision controls

is also discredited by earlier provisions of the APA itself and by express provisions

of the INA.  The APA provides that it "applies, according to the provisions thereof,

except to the extent that – (1) statutes preclude judicial review; or (2) agency action

---

[9] The Court is aware of the Supreme Court's dicta in Norton that section 706
of the APA "also authorizes courts to 'compel agency action . . . unreasonably
delayed'– but a delay cannot be unreasonable with respect to action that is not
required."  Norton, 542 U.S. at 63 n. 1.  For the reasons explained infra, earlier
provisions of the APA and the INA expressly prevent courts from exercising
jurisdiction over adjustment of status determinations.  The Court is not aware of
any authority giving a court jurisdiction over the process of adjudication when the
court is expressly precluded from exercising jurisdiction over the ultimate decision.

is committed to agency discretion by law."  5 U.S.C. § 701(a).  Plaintiffs' only complaints here are over the pace taken by USCIS in adjudicating their I-485 applications.  Since the adjudication of adjustment of status applications is plainly committed to agency discretion by the INA, 8 U.S.C. § 1255(a), section 701(a)(2) of the APA expressly precludes jurisdiction.  Eldeeb, 2007 WL 2209231, at *19; Safadi, 466 F. Supp. 2d at 700.

The APA also does not apply when "statutes preclude judicial review."  5 U.S.C. § 701(a)(1).  In 2005, Congress amended the INA to provide: "Notwithstanding *any other provision of law* . . . no court shall have jurisdiction to review . . . *any* other decision or action of the Attorney General . . . the authority for which is specified under this subchapter to be in the discretion of the Attorney General . . . ."  8 U.S.C. § 1252(a)(2)(B)(ii) (emphasis added).  It is difficult for the Court to conceptualize a clearer "preclusion of judicial review" than a preclusion over "any decision or action."

The Court necessarily concludes that the APA does not confer subject matter jurisdiction over this action.  The Court's conclusion is confirmed by a majority of courts which have considered whether the APA confers jurisdiction over adjustment of status determinations.  E.g., Safadi, 466 F. Supp. 2d 696; Eldeeb,

16

2007 WL 2209231; <u>Woodford v. Ridge</u>, No. 1:04-CV-650 (N.D. Ga. Mar. 18,

2005); <u>Badier</u>, 475 F. Supp. 2d 1294; <u>Hu</u>, 2007 WL 1515067, at *6; <u>Grinberg</u>, 478

F. Supp. 2d at 1355; <u>Romanovich</u>, 2007 WL 1229047, at *2; <u>Rogatch</u>, 2007 WL

1160358, at *2; <u>Serrano</u>, 2007 WL 1101434, at *3; <u>Qiu</u>, 486 F. Supp. 2d at 420-21;

<u>Li v. Gonzales</u>, 2007 WL 1303000, at *6.

  The Court appreciates Plaintiffs' interest in prompt decisions on their I-485

applications, yet the Court is also aware of the myriad security threats this nation

has faced in the past six years and will continue to face in the future.  The federal

government dedicated considerable resources to the security of our country and is

acting carefully and cautiously on applications of those aliens who wish to remain

here permanently.  Recent events and investigations of which this Court is aware

underscore that threats to the United States can exist anywhere and with anyone.

To the extent care is being taken in processing adjustment of status applications,

processing delays are a necessary result of the environment in which we live.

While the Court would like all applications to be processed immediately, it is not

for the Court to create its own jurisdictional review authority or to second-guess

those officials entrusted with processing applications.  That function was reserved

for Congress by the Constitution.  U.S. Const. art. III § 1.

### 3.      Jurisdiction under 28 U.S.C. § 1331 and 1346(a)(2)

Plaintiffs next contend the Court has jurisdiction under 28 U.S.C. § 1331 and § 1346(a)(2).[10]  Section 242(a)(2)(B)(ii) of the INA prevents the Court from exercising jurisdiction over actions committed in the INA to the discretion of the Attorney General.  8 U.S.C. § 1252(a)(2)(B)(ii).  While 28 U.S.C. § 1346(a)(2) provides original jurisdiction in the district courts over claims against the United States, the only cognizable claim Plaintiffs could have against the United States would be for "unreasonable delay" under the APA.  For reasons already explained, the APA does not apply when "agency action is committed to agency discretion by law."  5 U.S.C. § 701(a)(2).  Here, a federal agency has complete discretion over adjustment of status applications.  The APA does not apply, and Plaintiffs do not

---

[10]  28 U.S.C. § 1331 provides:

The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

28 U.S.C. § 1346(a)(2) provides:

 The district courts shall have original jurisdiction, concurrent with the United States Court of Federal Claims, of:

(2) Any other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department . . . .

have a recognized claim against the United States.

### 4.    Jurisdiction Under 28 U.S.C. § 1361

28 U.S.C. § 1361 states: "The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."  "The remedy of mandamus is a drastic one, to be invoked only in extraordinary situations."  In re BellSouth Corp., 334 F.3d 941, 953 (11th Cir. 2003) (internal quotation marks omitted).  "The test for jurisdiction is whether mandamus would be an appropriate means of relief."  Jones v. Alexander, 609 F.2d 778, 781 (5th Cir. 1980), reh'g denied, 613 F.2d 314 (11th Cir. 1980), cert. denied, 449 U.S. 832 (1980).[11]  "Mandamus relief is only appropriate when: (1) the plaintiff has a clear right to the relief requested; (2) the defendant has a clear duty to act; and (3) no other adequate remedy is available."  Cash v. Barnhart, 327 F.3d 1252, 1258 (11th Cir. 2003) (internal quotation marks omitted).  A mandamus action "is intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief and only if the defendant owes him a clear nondiscretionary duty."  Heckler v.

---

[11]  Decisions of the former Fifth Circuit decided prior to October 1, 1981 are binding precedent in the Eleventh Circuit.  Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

Ringer, 466 U.S. 602, 616 (1984).

Mandamus jurisdiction does not exist here.  Section 242 (a)(2)(B) of the INA *expressly* exempts the mandamus statute from conferring jurisdiction in the district courts over discretionary acts of the Attorney General.  8 U.S.C. § 1252(a)(2)(B) ("Notwithstanding any other provision of law . . . including . . . sections 1361 and 1651 of [Title 28] . . . no court shall have jurisdiction to review . . . any other decision or action of the Attorney General . . . .").

Plaintiffs also have not satisfied the elements necessary to vest jurisdiction over a mandamus action in the Court.  Plaintiffs have no "clear right to the relief requested."  Plaintiffs request immediate adjudication of their I-485 applications. No part of the INA grants them that right.  Patil, 2007 WL 1302752, at *2.  Section 245 conspicuously lacks binding or even suggested timeframes for agency adjudication.  Compare 8 U.S.C. § 1447(b) (120-day timeframe to adjudicate naturalization applications after examination).  Plaintiffs contend they have a "clear right" to adjudication within a "reasonable time."  Whether a passage of time is "reasonable" is itself a subjective, merits-based determination, not a "clear right."

Plaintiffs also have not shown a "clear duty to act."   Even assuming

Plaintiffs' allegations as true, <u>Jones</u>, 609 F.2d at 781, Plaintiffs show that the Attorney General and his delegates have only a "clear duty" to adjudicate I-485 applications.  Defendants are in the process of adjudicating Plaintiffs' applications; their duty thus is being met.

> **5.**  **Jurisdiction under the Declaratory Judgment Act (28 U.S.C. § 2201)**

Pursuant to the Declaratory Judgment Act, "[i]n a case of actual controversy *within its jurisdiction* . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."  28 U.S.C. § 2201 (emphasis added). The Declaratory Judgment Act does not itself enlarge federal courts' subject matter jurisdiction, it merely enlarges the procedural range of remedies available.  <u>Skelly Oil Co. v. Phillips Petroleum Co.</u>, 339 U.S. 667, 671 (1950).  Unless the Court already has jurisdiction through some other statute, the Declaratory Judgment Act, alone, does not confer jurisdiction.  <u>Id.</u> at 671-72.  Because the Court has concluded that no other statute vests it with jurisdiction, the Declaratory Judgment

Act fails to provide jurisdiction.

**B.    Motion To Dismiss For Failure To State A Claim Upon Which**
       **Relief Can Be Granted**

### 1.  Standard of Review

Federal Rule 12(b)(6) permits litigants to move to dismiss complaints which fail to state a claim upon which relief can be granted as a matter of law.  Fed. R. Civ. P. 12(b)(6).  In considering a defendant's motion to dismiss, the Court accepts plaintiff's allegations as true, Hishon v. King & Spalding, 467 U.S. 69, 73 (1984), and construes the complaint in plaintiff's favor.  Duke v. Cleland, 5 F.3d 1399, 1402 (11th Cir. 1993), reh'g denied, 13 F.3d 411 (11th Cir. 1994).  To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but must "give the defendant fair notice of what the claim is and the grounds upon which it rests."  Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007) (internal quotation marks omitted).  Ultimately, the complaint is required to contain "enough facts to state a claim to relief that is plausible on its face." Id. at 1974.

Even if this Court had jurisdiction over this action, Plaintiffs' allegations do not claim any recognized cause of action.  No provision of the INA compels USCIS to decide adjustment of status applications in any particular time.  See 8

22

U.S.C. § 1255(a).  Plaintiffs' reliance on the APA is similarly misplaced.  Plaintiffs

argue that the Attorney General's discretion over status adjustments is plenary

*except* for pacing, which must be completed in a "reasonable time."  Plaintiffs

support their argument with cases holding that long-delayed adjustment of status

applications state valid claims under the APA.  E.g., Cohen v. Ashcroft, No. 1:05-

CV-0182-CC (N.D. Ga. Oct. 14, 2005); Choudhry v. Chertoff, No. 1:07-CV-426-

CAP (N.D. Ga. Mar. 12, 2007); Haidari v. Frazier, No. 06-3215, 2006 WL

3544922, at *5-6 (D. Minn. Dec. 8, 2006); Singh, 470 F. Supp. 2d at 1067-70;

Elkhatib v. Bulter, No. 04-22407, 2005 WL 5226742, at *1 (S.D. Fla. June 6,

2005); Gelfer v. Chertoff, No. C 06-06724 WHA, 2007 WL 902382, at *2 (N.D.

Cal. Mar. 22, 2007).

    The Court finds those decisions unpersuasive.  The text of both the APA and

the INA does not indicate that the Attorney General has been given anything other

than complete discretion over adjustment of status determinations.  The Court's

conclusion is in line with the majority of district courts around the country.  E.g.,

Eldeeb, 2007 WL 2209231, at *19; Badier, 475 F. Supp. 2d at 1297-98; Safadi,

466 F. Supp. 2d at 700; Romanovich, 2007 WL 1229047, at *2; Grinberg, 478 F.

Supp. 2d at 1355; Levy v. Gonzales, No. 1:07-cv-644-TCB (N.D. Ga. Jun. 18,

2007); <u>Woodford v. Ridge</u>, No. 1:04-CV-0650-CAP (N.D. Ga. Mar. 18, 2005).

Plaintiffs fail to state a claim.

### C.   <u>Motion For Extension Of Time And Motion To Strike</u>

Also before the Court are Plaintiffs' Motion to Enlarge Period of Time for

Response to Defendants' Reply in Support of Motion to Dismiss [11] and

Defendants' Motion to Strike Plaintiffs' Sur-Reply [13].

Plaintiffs have filed a sur-reply brief in opposition to Defendants' motion to

dismiss [12]. Local Rule 7.1 contemplates the filing of responses to pending

motions, LR 7.1(B), NDGa, and permits, but does not require as a matter of routine

practice, the filing of one reply brief.  <u>Id.</u> 7.1(C).  "Neither the Federal Rules of

Civil Procedure nor this Court's Local Rules authorize the filing of surreplies.

Although the Court may in its discretion permit the filing of a surreply, this

discretion should be exercised in favor of allowing a surreply only where a valid

reason for such additional briefing exists, such as where the movant raises new

arguments in its reply brief."  <u>Fedrick v. Mercedes-Benz USA, LLC</u>, 366 F. Supp.

2d 1190, 1197 (N.D. Ga. 2005) (internal citations omitted).  Plaintiffs here already

filed a thirteen-page response in opposition, and Defendants' seven-page reply

brief raised no new arguments.  Plaintiffs did not seek leave of Court to file their

sur-reply, as this Court normally requires.  Since Plaintiffs have not shown a valid reason for the Court to consider additional briefing, Defendants' Motion to Strike is granted.  The Court has not considered Plaintiffs' sur-reply in deciding Defendants' motion to dismiss.

Plaintiffs' Motion to Enlarge Period of Time for Response to Defendants' Reply in Support of Motion to Dismiss is denied as moot.

**III**.    **CONCLUSION**

For the foregoing reasons,

**IT IS HEREBY ORDERED** that the Motion to Dismiss [4] filed by defendants Peter D. Keisler, Michael Chertoff, Emilio T. Gonzalez, and Evelyn Upchurch is **GRANTED**.

**IT IS HEREBY FURTHER ORDERED** that Defendants' Motion to Strike [13] is **GRANTED**, and Plaintiffs' Motion for Extension of Time [11] is **DENIED** as **MOOT**.

**SO ORDERED** this 30th day of October 2007.

WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE